## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:23-cv-22747-ALTMAN/Reid

JAMES TUNDIDOR, SR., DULCE E.
TUNDIDOR, JAMES TUNDIDOR, JR.
and PORKY'S CABARET, INC. d/b/a
BELLAS CABARET,

          Plaintiffs,

v.

CARLOS HERNANDEZ and CITY OF HIALEAH,

          Defendants.

_____/

### DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

Defendants, CARLOS HERNANDEZ ("Hernandez") and CITY OF HIALEAH ("City")

(collectively "Defendants"), by and through their respective undersigned counsel, move this Court,

pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and this Court's

Order [Dkt. No. 4], for the entry of an Order dismissing the Complaint [Dkt. No. 1] filed by the

Plaintiffs, JAMES TUNDIDOR, SR., DULCE E. TUNDIDOR, JAMES TUNDIDOR, JR. and

PORKY'S CABARET, INC. d/b/A BELLAS CABARET (sometimes collectively, "Plaintiffs"),

and, in support thereof, submit the following Memorandum of Law:

### INTRODUCTION

This is an action for damages allegedly arising out of a July 25, 2019 incident in which

various enforcement agencies of the City, purportedly at the direction or, at a minimum, with the

knowledge and approval of the City's then Mayor (Hernandez) entered a highly-regulated, adult

entertainment business owned and operated by DULCE E. TUNDIDOR (i.e., PORKY'S

CABARET, INC. d/b/a BELLAS CABARET) on land owned by her husband JAMES

TUNDIDOR, SR. for purposes of determining whether that business and the physical structure in which it was operating conformed to the City codes, ordinances, and Florida statutes regulating that business. Plaintiffs allege that the enforcement action was nothing of the sort, even though it resulted in the issuance of citations for at least 14 violations of the Florida Fire Prevention Code and an eventual finding by the Hialeah Building Department that the premises was unsafe for occupancy under § 8-5(b) of the Miami-Dade County Code of Ordinances. (Dkt. No. 1. at ¶¶ 92 & 93).[1]

Instead, Plaintiffs characterize the incident as a "pretextual police raid" orchestrated by Hernandez to further various personal and political interests, including dissuading non-party JESUS TUNDIDOR ("Jesus") from continuing his bid for a seat on the City Counsel. Plaintiffs also allege that the raid and the media coverage that followed suggesting the Plaintiffs and their business were in some way connected to "human trafficking," somehow: (1) violated their First and Fourth Amendment rights; (2) forced them to incur considerable attorney's fees battling City officials; (3) resulted in the permanent closure of their business and a substantial loss of profits; (4) caused "reputational" damage; and (5) inflicted severe emotional distress on Plaintiffs individually. Plaintiffs now seek to recover those damages from Defendants on various theories, including violations of their Constitutional rights.

---

[1] A complete listing of all the violations identified during the July 25, 2019 enforcement action, together with the agreed upon steps for their resolution, is found in the November 20, 2020 Compliance Agreement between the City and the property owner (James, Sr.), a copy of which, given its centrality to this dispute, should have, but was not attached as an exhibit to Plaintiffs' Complaint, but is attached hereto as **Exhibit A**. It is axiomatic that this Court may consider documents attached to a motion to dismiss where the document is central to the plaintiff's claim, and its authenticity is undisputed. *See, e.g., Gomez v. Miami-Dade Cnty.*, 563 F. Supp. 3d 1211, 1217 (S.D. Fla. 2021), *appeal dismissed*, 21-13770-CC, 2022 WL 16580843 (11th Cir. June 30, 2022). *See also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

However, Plaintiffs' Complaint should be dismissed, because (1) the individual Plaintiffs lack standing to recover damages allegedly suffered by a corporate entity (i.e. "Bellas"); (2) Hernandez is immune from suit; (3) Plaintiffs have failed to state a claim against the City imposing municipal liability; and (4) Plaintiffs have not properly alleged a cognizable claim for a violation of their constitutional rights.

## STANDARD OF REVIEW

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. *See also Iqbal,* 556 U.S. at 678 (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Moreover, a complaint cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557 (alteration in original)). Instead, the Supreme Court has emphasized that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, the mere possibility that a defendant acted unlawfully is insufficient. Iqbal, 556 U.S. at 678; *see also* 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-36 (3d ed. 2004) (noting that a "pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). Instead, the complaint must include "[f]actual allegations . . . [sufficient] to raise a

28483233v1

right to relief above the speculative level" (i.e., to move the pleading "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555 & 570. *See also Iqbal*, 556 U.S. at 678 (Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation").[2]

Finally, a complaint may be dismissed for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *Lawson v. City of Miami Beach*, 908 F. Supp.2d 1285 (S.D. Fla. 2012). *See also Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1022 (11th Cir. 2001); *Jones v. Bock*, 549 U.S. 199, 215 (2007) (reiterating that principle). This rule applies with particular force to the defense of qualified immunity, which can allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Lawson*, 908 F. Supp.2d at 1289 (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010)). "As a result, 'unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Id.* (quoting *Cottone*, 326 F.3d at 1357).

## **ARGUMENT**

## I.     **THE COMPLAINT VIOLATES FEDERAL RULE OF CIVIL PROCEDURE 8**

---

[2] "Conclusory assertions are especially frowned upon where, as here, a plaintiff is seeking to state a cause of action under § 1983. *See, e.g., Bush v. City of Daytona Beach*, No. 6:12-CV-1541-ORL-36, 2013 WL 3209430, at *6 (M.D. Fla. 2013) (*citing Keating v. City of Miami*, 598 F.3d 753, 762–63 (11th Cir. 2010) ("this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out non-meritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim") (internal quotation marks omitted)).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the case showing that the pleader is entitled to relief." Categories of shotgun pleadings include incorporating by reference previous counts, containing facts not connected to particular causes of action, and merging multiple parties or claims for relief into a single count. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

Here, Plaintiffs fail to provide separate and distinct allegations of each individual Plaintiff, including the business entity Bellas, against each Defendant. Plaintiffs vaguely and blanketly allege claims against the Defendants by all Plaintiffs in each count, without specifying the claims of any particular Plaintiff. The Complaint makes the blanket statement, without detailing or distinguishing how the business and each of the three Plaintiffs were individually injured, that "the Tundidors and Bellas were branded in the media and in political communications by Hernandez's allies as being associated with human trafficking, prostitution, and drugs"; "the Tundidors suffered mental anguish, embarrassment, and emotional distress, and have since the date of the raid suffered from sleep difficulties and other physical ailments". (Dkt. No. 1 at ¶¶ 114-116, 137-138, 157-158, 178-179, 201-202).

Moreover, it cannot be said that Bellas and all three individual Plaintiffs, James, Sr., James. Jr., and Dulce Tundidor, shared identical experiences on July 25, 2019, "so they cannot lump their claims together as the facts supporting a claim for relief would be individual to each Plaintiff." *See Fletcher v. City of Madison*, No. 5:21-CV-1432-LCB, 2023 WL 2087967, at *6 (N.D. Ala. Feb. 17, 2023). As a result, the Complaint fails to meet Rule 8 and should be dismissed.

## II.        PLAINTIFFS LACK STANDING

"To sufficiently plead Article III standing, a plaintiff must plead a plausible injury in fact, causation, and redressability by the reviewing court." *Fuller v. Carollo*, No. 18-24190-CIV, 2019

28483233v1

WL 13293974, at *3 (S.D. Fla. Apr. 30, 2019), *report and recommendation adopted*, No. 18-24190-CIV, 2019 WL 13293972 (S.D. Fla. June 13, 2019) (citing *L.S. by Hernandez v. Peterson*, 2018 WL 6573124, at *5 (S.D. Fla. Dec. 13, 2018). "If a plaintiff cannot satisfy these constitutional standing requirements, then the case lies outside of the district court's jurisdiction." *Id*. (citing *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1038 (11th Cir. 2008)).

The individuals Plaintiffs have each pled identical damages i.e., mental anguish, embarrassment, emotional distress, sleep difficulties, and other physical ailments without pleading any allegations as to how any specific purported action by the Defendants caused these alleged injuries. (Dkt. No. 1 at ¶¶ 138, 158, 179, 202). Each wherefore clause with identical conclusory allegations asserts that "Plaintiffs" are seeking lost profits, compensatory damages, reputational harm, emotional distress, and attorneys' fees. Yet, for example as pled, James Jr. as an operator of Bellas cannot establish lost profits on behalf of Bellas' or how Plaintiff's James Sr. and James Jr. are entitled to damages for the alleged Fourth Amendment violation. Here, despite pleading 202 paragraphs, Plaintiffs have failed to establish which of those alleged damages is attributable to each Plaintiff and what alleged action by the Defendants has caused them to suffer these alleged damages. As plead, Defendants are left to speculate and conjure what exactly comprises each violation and how each Plaintiff is entitled any attributable damage.

Alternatively, the individual Plaintiffs lack standing to bring claims against Hernandez and the City because they were not individually injured, and instead, seek damages from injuries purportedly suffered by the business. In the Complaint, the individual Plaintiffs allege that they have suffered injuries as a result of conduct made in retaliation for Plaintiffs' exercise of their First Amendment rights and in violation of their Fourth Amendment rights, including monetary

damages, specifically damages for "lost profits" and "reputational harm", *inter alia*. (Dkt. No. 1 at pp. 31, 35, 40, 46).

The lost profits resulted from **valid** violations of the Florida Building Code and various sections of the City of Hialeah Code of Ordinances. *See* **Exhibit A**. Plaintiffs concede that "Bellas was subject to yearly 'annual assembly' inspections by the Hialeah Fire Preventative Bureau" which sometimes "resulted in the identification of issues that required remediation" for approval or passing. (Dkt. No. 1 at ¶¶ 27, 28). The Complaint adds that in regards to the July 25, 2019 inspection, "the Code Case Worksheet establishes, the raid was in fact a property inspection 'by a code team set up of a police, building, fire, and code'"; "'Police scheduled the inspection'". (*Id*. at ¶¶ 83, 174). Present during the City's entrance of the commercial property were Alexis Riveron, Jr. the Hialeah Building Official, Rey Regalado, the Chief Building Inspector, Miguel Mendez, the Chief Electrical Inspector, Juan Cascardo, the Plumbing Inspector, Marcos Cardorso, a Code Enforcement Officer, Paul Garcia, an Assistant Fire Marshal and Michael Diaz, a Fire inspector. (*Id*. at ¶ 80)

According to the Complaint, the Fire Department reported that Bellas maintained "14 violations of the Florida Fire Prevention Code" consisting of deteriorated parking lots, replacing smoke detectors and breakers, missing occupational licenses, and alterations to the interior and exterior of the Property without permits. (*Id*. at ¶¶ 92-93). The Complaint also states that the Building Division deemed the property as "'unsafe' under § 8-5(b) of the Miami-Dade County Code of Ordinances. *Id*. at ¶¶ 93. As a result, "Bellas was forced to cease its operations and to prevent all public access to the Property pending remediation or resolution of the violations." (*Id*. at ¶ 94). Absent from the Complaint is any allegation claiming Bellas was in fact in compliance with the City's and the County's Code. *See generally* Dkt. No. 1. Thus, Bellas did not incur any

28483233v1

damages because of a constitutional violation, but for the business's failure to comply with the Code. The court in *6420 Roswell Rd., Inc. v. City of Sandy Springs, Georgia*, determined that even if the city's application of its fire code to adult entertainment establishment triggered First Amendment scrutiny, city's immediate closure of establishment for fire code violations did not violate owner's free expression rights since closure was based on bona fide, fire code violations. 484 F. Supp. 3d 1321, 1339 (N.D. Ga. 2020) (granting motion to dismiss plaintiff's First and Fourth Amendment claims).

Moreover, Plaintiffs allege they incurred "reputational harm" as a result of media coverage. (Dkt. No. 1 at ¶¶ 86-90). Yet the Complaint fails to allege a causal nexus between either Hernandez or the City and the alleged harm as it merely states that "the Reporter and cameraman were invited to and participated in a pre-raid briefing led by Commander Villa" who stated the purposes of the police operation was "human trafficking". (*Id*. at ¶¶ 86-87). Without factual support, Plaintiffs allege that "Hernandez and Hialeah invited the media presence as yet another intimidation tactic." (*Id*. at ¶ 90).

Accordingly, Plaintiffs failed to establish an injury-in-fact and the Complaint in its entirety must be dismissed for lack of standing. *See e.g. Poor & Minority Just. Ass'n v. Chief Judge, Tenth Jud. Cir. Ct. of Fla.*, No. 8:19-CV-2889-T-02TGW, 2020 WL 3286140, at *2 (M.D. Fla. Mar. 27, 2020) ("the Association must specify how it, as opposed to the individual plaintiffs, suffered concrete injury in fact. This may affect standing.").

III.    **HERNANDEZ IS IMMUNE FROM SUIT**

Even if Plaintiffs' Complaint were otherwise legally sufficient, which, as explained more fully herein, it is not, this Court would nonetheless have to dismiss Counts I and III, because Hernandez is entitled to qualified immunity for the alleged acts and/or omissions that justify

Plaintiffs' claims against him. Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities. *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997). The doctrine shields government officials from liability to the extent their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001) (*citing Harlow v. Fitzgerald*, 457 800, 817-18 (1982). Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985).

As a general rule, dismissal based on qualified immunity is proper when the "complaint fails to allege the violation of a clearly established constitutional right." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (*quoting St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). To prevail on such a motion, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place." *Storck*, 354 F.3d at 1314 (*citing Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). A government official is deemed to act within his discretionary authority, when their actions were (1) undertaken by the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1144 (11th Cir. 2017*). See also N.C. v. Alonso*, No. 12-61646, 2013 WL 6564217, at *10 (S.D. Fla. Dec. 13, 2013) ("The description of a function as 'discretionary' does not simply imply that the employee used individual discretion, but rather, that the decision was "of a type that fell within the employee's job responsibilities").

"In applying each prong of this test, [courts] look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally

inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Mikko*, 857 F.3d at 1144 (*quoting Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)); *Pyatt v. Florida Int'l Univ. Bd. of Trustees*, 1:20-CV-24085, 2020 WL 6945962, at *7 (S.D. Fla. Nov. 25, 2020). *See also Hill v. Dekalb Reg'l Youth Det. Crt.*, 40 F.3d 1176, 1185  n. 17 (11th Cir. 2004) ("A government official acts within his or her discretionary authority if **objective circumstances** compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority" (emphasis added)), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9 (2002) .

Notably, "[i]t is particularly difficult to overcome the qualified immunity defense in the First Amendment context." *Gaines v. Wardynski*, 871 F.3d 1203 (11th Cir. 2017). See also *Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000) ("'a defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful'"); *Martin v. Baugh*, 141 F.3d 1417, 1420 (11th Cir. 1998) (emphasizing that it is "only in exceptional cases [that] government actors have no shield against claims made against them in their individual capacities" and that the bar is especially high when a plaintiff's claim against such an actor is predicated on the First Amendment); *Hansen v. Soldenwagner*, 19 F.3d 573, 576 (11th Cir. 1994) (decisions in the First Amendment context "tilt strongly in favor immunity" and only in the rarest of cases will it be found that reasonable official should have known that he violated "clearly established" law); *Dartland v. Metropolitan Dade Cty.*, 866 F.2d 1321, 1323 (11th Cir. 1989) (only an "extraordinary case" will survive qualified immunity in the First Amendment context).

28483233v1

Here, Plaintiffs affirmatively allege that Hernandez was Mayor when the allegedly wrongful acts occurred. Compl. ¶¶ 11, 12, 13, 34, 81, & 126. As such, Hernandez was the chief executive and chief administrative officer of the City. In that capacity, Hernandez had the power to "exercise the executive powers of the city and supervise all departments" and to direct the actions of its various departments, agencies, and resources, including those that were used in carrying out the July 25, 2019 enforcement action that forms the basis for Plaintiffs' Complaint. *Id.* at ¶¶ 12, 13, & 80. This is further evidenced because Plaintiffs have made identical allegations against both Hernandez and the City. Thus, by definition, any direction and/or authorizations Hernandez may have given in connection with the July 25, 2019 actions by City personnel directed towards Bellas were, when viewed objectively, within his discretionary authority. Accordingly, the burden shifts to Plaintiffs to show that Hernandez is not entitled to qualified immunity, which they have not done and cannot do.

To meet their burden, Plaintiffs "must establish that (1) [their] complaint pleads a plausible claim that the defendant violated [their] federal rights (the 'merits' prong), and that (2) precedent in this Circuit at the time of the alleged violation 'clearly established' those rights (the 'immunity' prong)." *Wall-DeSousa v. Florida Dep't of Hwy. Safety & Motor Vehicles*, 691 F. App'x 584, 589 (11th Cir. 2017); *Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016). If they fail to satisfy either of those prongs, the complaint should be dismissed. *See, e.g., Williams v. Bd. of Regents of the Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007). Here, Plaintiffs have failed to adequately plead a violation of their federal rights, nor can they do so given that two of the four Plaintiffs, James, Sr. and Dulce Tundidor, were not even on the premises at the time of the July 25, 2019 enforcement action and a third, Bellas has no such rights. Nor have Plaintiffs alleged any precedent in this Circuit that was in force and effect at the time of the enforcement actions that

28483233v1

gave rise to "clearly established" rights that Hernandez somehow violated. As a result, Hernandez is entitled to qualified immunity and Plaintiffs' claims should be dismissed.

## IV.        PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE CITY

### A.  The Complaint Fails to Identify a City Policy, Practice, or Custom That Caused Plaintiffs' Alleged Constitutional Violations.

To survive under *Monell*, a § 1983 claim against a municipality must allege three (3) specific elements: "(1) that [the Plaintiff's] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

It is well settled that a local government, such as the City, cannot be subjected to *respondeat superior* liability; it "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 695 (1978); *see also Brown*, 520 U.S. 403 ("[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor."); Y*oung*, 59 F.3d at 1171 (11th Cir. 1995) ("It has long been settled that respondeat superior principles of liability do not apply to municipalities in § 1983 actions."); *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1145 (11th Cir. 2007) (city "cannot be held liable on a vicarious liability theory"); *Webb v. City of Venice*, 2020 WL 4785073 at *2 (M.D. Fla. 2020) (same). The plaintiff must instead establish that the governmental entity has a "policy or custom" that caused the injury to impose municipal liability under *Monell* and § 1983. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). In other words, a municipality "may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, that is, acts which the municipality has officially sanctioned or ordered." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Holding municipalities liable without proof that a specific custom or policy

caused a particular constitutional violation "would open municipalities to unprecedented liability under § 1983." *Id.* at 391.

To succeed under *Monell*, a plaintiff must specifically "identify a municipal policy or custom that caused the plaintiff's injury." *Brown*, 520 U.S. at 403; *See also Gold,* 151 F.3d at 1350. The Complaint fails to allege or show that a municipal policy or practice resulted in the alleged injuries, and thus, there is no basis for municipal liability on his § 1983 claims. Instead, Plaintiffs merely attempt to rely on respondeat superior to establish the City's liability. *See* Dkt. No. 1 at ¶¶ 139-158, 180-202. The Complaint fails to even allege any ratification, support, or adoption on behalf of the City of the alleged malicious actions of the mayor. *See generally Id.* The Complaint makes no mention of any unconstitutional custom or policy of the City. *Id.* Because Plaintiffs cannot rely upon respondeat superior to impose vicarious liability on the City of Hialeah for the actions of its employees, Counts II and IV fail and must be dismissed as a matter of law. *See Moody v. City of Delray Beach*, 609 F. App'x 966, 967–68 (11th Cir. 2015) (affirming dismissal of § 1983 claim against the City); *Barnes v. Miami-Dade Cnty.*, No. 13-20778-CIV, 2014 WL 12851971, at *6 (S.D. Fla. Mar. 12, 2014) ("Because the FAC fails to allege that the Officers' use of force was the result of an official policy adopted or ratified by the Board or County Manager, dismissal is warranted with respect to any claim of an officially-promulgated County policy")

**B.** **The Allegedly Unconstitutional Raid, a Single-Event, is Insufficient to Prove a Policy or Establish the Requisite Causation Under *Monell*.**

A plaintiff may establish a policy by showing either "(1) an officially promulgated city policy, or (2) an unofficial custom or practice of the [city] shown through the repeated acts of a final policymaker." *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1326 (S.D. Fla. 2018); *Hernandez v. Miami-Dade Cnty.*, No. 1:21-CV-22656-JLK, 2021 WL 4709784, at *3 (S.D. Fla. Oct. 8, 2021). To establish the existence of an unofficial custom or practice, the plaintiff must

28483233v1

show that the practice is "longstanding and widespread", and "so settled and permanent that it takes on the force of law.'" *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016); *see also Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991); *Fountain v. City of Lakeland*, 2011 WL 3703454 at *5 (M.D. Fla. Aug. 23, 2011) ("In order to establish a policy or custom sufficient to impose municipal liability, it is generally necessary to show a persistent and widespread practice"). "The deprivations that constitute widespread abuse ... must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Lloyd v. Tassel*, 318 F. App'x. 755, 760 (11th Cir. 2009) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)).

"[R]andom acts or isolated incidents are insufficient to establish a custom or policy." *Edom v. Chronister*, No. 8:20-CV-1624-KKM-AEP, 2021 WL 4244845, at *11 (M.D. Fla. Sept. 17, 2021) (citing *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986)); *see also Alimenti v. Town of Howey-in-the-hills, Fla.*, No. 5:20-CV-386-CEH-PRL, 2023 WL 2598662, at *15 (M.D. Fla. Mar. 22, 2023) (finding a single incident is inadequate to establish custom or violation as retaliation for exercising First Amendment rights). "[S]ingle, isolated act[s]…fail[] to establish the requisite causal connection between the alleged constitutional deprivation and [the supervising official]" to impose municipal liability under *Monell*. *Smith v. Tony*, No. 18-CV-62098, 2019 WL 7562374, at *3 (S.D. Fla. Sept. 16, 2019), *report and recommendation adopted sub nom. Smith v. Israel*, 2019 WL 5204562 (S.D. Fla. Oct. 16, 2019); *see also Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1271 (11th Cir. 2005) ("To hold the municipality liable, there must be 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'"). "Neither the Supreme Court nor the Eleventh Circuit has ever imposed municipal liability based on a single incident under *Monell*". *Casado*, 340 F. Supp. 3d at 1327.

In the instant matter, Plaintiffs allege that the raid, a single event, violated their First and Fourth Amendment rights. Dkt. No. 1 at ¶¶ 153, 180-202. In addition, the Complaint is devoid of prior incidents or any facts from which it could be inferred that others have been subjected to constitutional violations at the hands of Hernandez similar to the violations allegedly suffered by Plaintiffs in this case. *See Flink v. City of Fort Walton Beach Police Dep't*, No. 3:22CV8087-TKW-HTC, 2022 WL 19363792, at *6 (N.D. Fla. Oct. 24, 2022); *Casado*, 340 F. Supp. 3d at 1327.

Therefore, the fact that the Plaintiffs allegedly suffered a constitutional violation on a single occasion is insufficient to show the existence of an unofficial custom or policy or a causal link. *See City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("more proof than the single incident [is] necessary … to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation"). Accordingly, Counts II and IV must be dismissed for failure to state a claim under Monell. *See Marantes*, 649 F. App'x at 672-73 (affirming dismissal of Monell claim given one two incident fail to show "longstanding and widespread" practice); *Flink*, 2022 WL 19363792 at *4 (dismissing *Monell* claim); *Casado*, 340 F. Supp. 3d 1320, 1327 (S.D. Fla. 2018) (dismissing *Monell* claim against county).

### C. Even Assuming Hernandez, Then-Mayor, was a Policy Maker, The Alleged Actions of Hernandez Do Not Impose § 1983 Municipal Liability on the City.

To impose § 1983 municipal liability, the decision maker must

possess[] final authority to establish municipal policy with respect to the actions The fact that a particular official—even a policy making official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 637 (11th Cir. 1991) (citations omitted) (citing

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986).

Plaintiffs attempt to impose municipal liability by stating that Hernandez was a final policymaker for the City of Hialeah (Dkt. No. 1 at ¶ 181), he had supervisory authority over the Fire Chief, Chief of Police, and the divisions for code compliance, building, and planning and zoning (Dkt. No. 1 at ¶¶ 143, 144, 153, 184, 185, 191) and that he "orchestrated the raid" (Dkt. No. 1 at ¶ 81). Plaintiffs rightfully contend that Hialeah has a "strong mayor/council" form of government. Dkt. No. 1 at ¶ 11; the Hialeah City Charter, Article I, § 1.02. However, Plaintiffs wrongfully pleads that the Mayor is a final policymaker for the City of Hialeah. *Id*. at ¶¶ 140, 181. The Complaint recognizes that it is the City Council that maintains the authority to pass legislation and may override any mayor veto given it is designated by the Charter with the power and duty to "legislate for the city by adopting ordinances and resolutions in the best interest of all the citizens of the city" and "to override the mayor's veto of an ordinance or a resolution by an affirmative vote of at least 5 councilmembers." Hialeah City Charter, Article II, § 2.02(a); Dkt. No. 1 at ¶ 15. In addition, the City Council has the power and duty to approve the appointment of and ratify the removal of a department head by the mayor and "to inquire into the conduct of any municipal office, department, agency, or officer". *Id*. Absent from the duties and powers of the mayor is any similar authority to pass legislation or even recommend adoption of ordinances. Hialeah City Charter, Article II, § 2.01(a); The mayor merely **supervises** all departments including the municipal divisions for code compliance, building, and planning and zoning as well as the Fire Chief and Chief of Police. Dkt. No. 1 at ¶¶ 12-13; Hialeah City Charter, Article IV, §§ 4.04 and 4.05.

Similarly, in *Lomelo*, the "Sunrise city charter granted [the mayor] the power to oversee and administer all departments and agencies of the city, including the planning and zoning department." *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 637 (11th Cir. 1991). "The charter

28483233v1

further gave the city council the power to override [the mayor's] veto with regard to zoning matters." *Id*. The Court concluded that "under the charter, [the mayor] was not the ultimate policy-making authority regarding zoning issues in the city of Sunrise" considering "official's actions subject to review procedures do not amount to complete delegation of authority". *Id*. (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 125 (1988). "The Sunrise city charter, which authorizes a mayor-council form of government, does not permit the mayor alone to determine the policy of the city. Only the city council can make such determinations." *Id*. at 638.

Even assuming Plaintiffs have plausibly alleged that Hernandez was a policy making official for purposes of imposing liability on the City, the allegations do not support policy-making authority with respect to the alleged actions of Hernandez and the area in question. According to the Complaint, public records demonstrate the that Police were investigating the Tundidors and Bellas in the days before the raid and reports for the Plaintiffs were produced "At the behest of the Police". Dkt. No. 1 at ¶ 82. The only factual allegation attempting to link Hernandez as orchestrating the events of July 25, 2019, is that HPD Officer Perez stated that " 'this came from the big boss' impliedly referring to Defendant Hernandez" despite the reasonable conclusion that the big boss be the Chief of Police. (*Id*. at ¶ 134). The remainder of allegations in the Complaint merely state, in a conclusory manner, that Hernandez orchestrated the "raid". (*Id*. at ¶¶ 81, 99, 116, 133, 137). Conclusory allegations are not supported in the pleading. Courts require "more than labels and conclusions" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to survive a motion to dismiss for failure to state a claim. *Turner v. Williams*, 65 F.4th 564, 580–81 (11th Cir. 2023) (affirming dismissal where"[b]eyond bare assertions that … '[t]he arresting officer was instructed by [defendant] not to conduct or failed to conduct a reasonable investigation' to determine the presence of probable

cause for [plaintiff's] arrest, the Complaint does not connect [defendant] to the act of arrest or the application for the arrest warrant except by conclusory statements.")

Even if Hernandez was vested with final policy-making authority regarding the subject areas in question, his alleged actions involving a "political hit" do not subject the City to liability under § 1983. "[N]ot every act of [a policy-making] official will subject the city to liability under section 1983." *Manor Healthcare Corp. v. Lomelo*, 929 F.2d at 638. (finding that even if the mayor was vested with policy-making authority regarding the subject matter in question, the city was not liable for his alleged bribery and extortion). Similar to the city in *Lomelo*, here, the City of Hialeah never adopted nor ratified Hernandez's alleged activities involving a "political hit"; these alleged activities would have been to benefit himself rather than the City; and the City did not develop a custom or practice of allowing Hernandez to function without any supervision. *See Id*. Nor do the Plaintiffs allege otherwise. The Eleventh Circuit determined that "Monell and its progeny prohibit" it from holding the city vicariously liable for a mayor's personal acts. *Id*.  Counts II and IV must therefore be dismissed.

### D.  Plaintiffs Cannot Recover Punitive Damages From the City

In the wherefore clause under each count, including the two causes of action against the City, Plaintiffs request punitive damages. (Dkt. No. 1 at pp. 36, 46 ¶). Punitive damages cannot be recovered against a municipality in a § 1983 claim. *City of Newport.*, 453 U.S. 247, 271 (1981); *Eddy v. City of Miami*, 715 F. Supp. 1553, 1558 (S.D. Fla. 1989); *Morris v. Crow*, 825 F. Supp. 295, 299 (M.D. Fla. 1993) (local governmental entities are immune from punitive damage claims under 42 U.S.C. § 1983); s*ee also Fleurant v. City of Port St. Lucie*, No. 19-14032-CV, 2019 WL 12021806, at *9 (S.D. Fla. Nov. 14, 2019), *report and recommendation adopted sub nom. Fleurant v. City of Port St. Lucie, Fla.*, No. 2:19-CV-14032, 2019 WL 12025012 (S.D. Fla. Dec. 10, 2019)

(granting motion to dismiss with prejudice as to plaintiff's prayer for punitive damages in *Monell* claim).

As such, Plaintiffs are barred from collecting any punitive damages, and these requests must be stricken and/or dismissed from the Complaint. *See USA Ent. Grp., Inc. v. City of Pompano Beach*, No. 18-CV-62740, 2019 WL 1383246, at *7 (S.D. Fla. Mar. 27, 2019), *aff'd sub nom. USA Ent. Grp., Inc. v. Tony*, 847 F. App'x 642 (11th Cir. 2021) (striking claims of punitive and/or exemplary damages); *Eddy v. City of Miami*, 715 F. Supp. at 1558 (striking claim for punitive damages against city); *Sada v. City of Altamonte Springs*, No. 608-CV-1368-ORL19GJK, 2008 WL 5110799, at *10 (M.D. Fla. Nov. 25, 2008) (striking request for punitive damages against the city); *Dayton v. City of Marco Island*, 2020 WL 2735169 at *5 (M.D. Fla. 2020) (striking demand for punitive damages against city); *Moody v. Miami-Dade Cnty.,* No. 19-CV-24638, 2020 WL 13614264, at *3 (S.D. Fla. July 24, 2020) (dismissing plaintiff's claim for punitive damages against the county).

## V.      PLAINTIFFS FAIL TO ALLEGE ANY COGNIZABLE CONSTITUTIONAL VIOLATION

Given Hernandez' entitlement to qualified immunity and the Complaint's failure to impose municipal liability against the City, this Court need not consider the myriad of other deficiencies that require the dismissal of Plaintiffs' Complaint. In the event it is inclined to do so, however, the most notable is Plaintiffs' failure to allege a cognizable Constitutional violation.

### A.   Plaintiffs Have Not Stated A Claim For First Amendment Retaliation[3]

---

[3] Defendants note that within Counts I and II, Plaintiffs cite to Florida Statutes §§ 112.311(5), 112.313(6) and 112.2136. Dkt. No. 1 at ¶¶ 127, 128, 146, 147. Not only are the citations improperly cited, but also a violation of the Code of Ethics for Public Officers and Employees contained in Part III of Chapter 112, Florida Statutes, does not create a private cause of action. Rather, this Chapter provides that a Commission on Ethics is created to serve as the guardian of the standards of conduct for the officers and employees of the state with the duty "to receive and investigate

To survive a Rule 12(b)(6) motion to dismiss in a claim for First Amendment retaliation under Section 1983, a plaintiff must allege facts establishing that: (1) his speech or act was constitutionally protected by the First Amendment; (2) a state actor's retaliatory conduct adversely affected the protected speech; and (3) that there is an actual causal connection between retaliatory actions and the adverse speech. *Carruth v. Bentley*, 942 F.3d 1047, 1061 (11th Cir. 2019); *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

Plaintiffs' Complaint falls short on each of those elements. **First**, they do not plead facts. Instead, they simply allege, in conclusory fashion, that Defendants "raided" Plaintiffs' business establishment in retaliation for Jesus' alleged refusal to stand down from his run for political office and Plaintiffs' support of their family member's political run. More is required.

**Second**, a defendant's actions are actionable only if the purported retaliatory conduct would likely deter a person of ordinary firmness from the exercise of their First Amendment rights. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Plaintiffs have not pled, nor can they plead that happened here. To the contrary, upon information and belief, Jesus Tundidor not only continued his campaign, but ultimately won the seat he was seeking. (Dkt. No. 1 at ¶ 105).

**Third**, Plaintiffs have not adequately alleged that protected speech was the motivating factor behind the Defendants' purported conduct. *Smith v. Mosely*, 532 F.3d 1270, 1278 (11th Cir. 2008). *See also Carruth*, 942 F.3d at 1061 (complaint must include sufficient factual (and not conclusory) allegations of an actual causal connection between retaliatory actions and adverse speech); *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1344 (S.D. Fla. 2014) (to survive dismissal,

---

sworn complaints of violation of the code of ethics…." §§112.320 and 112.322, Florida Statutes. Only final action by the Commission is subject to judicial review. § 112.3241, Florida Statutes.

a plaintiff must allege a sequence of events from which a retaliatory motive can be plausibly inferred, notwithstanding other non-retaliatory motives the defendant may harbor).

Here, the sole allegation that even remotely suggests the existence of an actual causal connection between the July 25, 2019 incident, Hernandez, and Plaintiffs' speech, is a reference to a comment Hernandez purportedly made that was "loaded with an unspoken meaning" reminded Jesus Tundidor that he was politically vulnerable because of the Tundidor family's adult entertainment business. Compl. ¶ ¶ 131, 150, 166, & 188. This statement alone fails to establish an actual causal connection between the retaliatory action and the adverse speech.

Accordingly, as to Hernandez, Count I must be dismissed.

**B.  Plaintiffs Fail To Allege A Cognizable Fourth Amendment Violation**

In Counts III and IV, Plaintiffs attempt to allege a claim for unlawful search and seizure because the Officers did not have a warrant to enter the premises. James Jr., was not searched or seized, was the sole Plaintiff present during the alleged raid. He identified himself as the person in charge of Bellas' that evening and provided access to the property.  (Dkt. No. 1 at ¶74).

 Warrantless administrative inspections "do not offend the Fourth Amendment if they are necessary in order to monitor closely regulated businesses for the purpose of learning whether a particular business is conforming to the statute regulating that business." *Bruce v. Beary*, 498 F.3d 1232, 1239 (11th Cir. 2007). Liquor establishments, including nightclubs and bars, are "closely regulated." *Crosby*, 187 F.3d at 1346 ("The liquor industry long has been subject to close supervision and inspection."). Additionally, "an administrative inspection of a closely regulated business is a well-established exception to the warrant requirement for a search." *Id*. Even so, administrative inspections may be unreasonable if they do not have a "properly defined scope." *Bruce*, 498 F.3d at 1240. Ultimately, the primary purpose of the Fourth Amendment in this context "is to protect citizens from the 'unbridled discretion [of] executive and administrative officers.'"

*Id*. Pursuant to Section 18-208 of the City Code, "Inspection by police. It shall be unlawful for any establishment providing entertainment and/or consumption of alcoholic beverages to refuse or prevent reasonable inspection by police officers during **any time** in which the establishment is open for business" (emphasis added). Here, as part of the operation

Plaintiffs affirmatively allege that Bellas' is a closely-regulated, liquor-serving establishment. Compl. ¶ 174. Thus, the City Code expressly vests officers with the unqualified right to enter that establishment at any time, including during business hours. There is nothing in that Code that obligates officers to provide advance notice to the owners and/or proprietors of any such establishment of the City's intention to exercise that right and conduct an inspection, nor are officers required to secure and present a warrant as a precondition to conducting that inspection. *Crosby v. Paulk*, 187 F.3d 1339, 1348 (11th Cir. 1999) (recognizing that specific notice of the inspection would have frustrated the purpose of the administrative search). Accordingly, there was no Fourth Amendment violation and any and all allegations in the Complaint predicated on the existence of one must be dismissed.

<u>**CONCLUSION**</u>

Based on the foregoing points and authorities, the Defendants, CARLOS HERNANDEZ and the CITY OF HIALEAH, respectfully request that this Court dismiss Plaintiffs' Complaint and that it grant Defendants any and all such further relief to which they are entitled.

Respectfully submitted,

<u>*/s/ Christine L. Welstead*</u>
Christine L. Welstead, Esq. (FBN#970956)
Christine.Welstead@bowmanandbrooke.com
Gisselle P. Watkins, Esq. (FBN#1002543)
Gisselle.Watkins@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza - Suite 800
Miami, FL 33134-5214

28483233v1

Tel: (305) 995-5600; Fax: (305) 995-6100

*Attorney for Defendant, Carlos Hernandez*

/s/ Lourdes E. Wydler
Lourdes E. Wydler, Esq. (FBN#719811)
lew@wydlerlaw.com
Lauren D. Martin, Esq. (FBN#1034166)
ldm@wydlerlaw.com
dinah@wydlerlaw.com
guertty@wydlerlaw.com
**WYDLER LAW**
2600 Douglas Road, PH-4
Coral Gables, FL 33134
Tel: (305) 446-5528; Fax: (305) 446-0995

*Attorney for Defendant, City of Hialeah*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the **5th** day of September, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing

<u>Service List</u>

Peter Klock, II, Esq. (FBN 103915)
Lissette M. Carreras, Esq. (FBN 018079)
BAST AMRON LLP
*Counsel for Plaintiffs*
One Southeast Third Avenue, Suite 2410
Miami, FL 33131
Telephone: 305-379-7904
Facsimile: 786-206-8740

/s/  Christine L. Welstead
Christine L. Welstead

28483233v1